FILED

AUG 17 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>RONALD EUGENE COX and<br>MICHELLE MARIE COX,<br><br>    Debtor.<br>_____/<br><br>LOANSTAR MORTGAGE SERVICES, LLC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>JAMES EDWARD SALVEN, et al.<br><br>    Defendant.<br>_____/ | Case No. 03-16441-A-7<br><br>03-16641<br><br><br><br>Adv. No. 05-1177<br>DC No. DRJ-1<br><br><br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br>RE MOTION TO AVOID<br>LIEN OF SIRE ENTERPRISES LTD. |

    Plaintiff Loanstar Mortgage Services, LLC filed this adversary proceeding to interplead funds remaining from a nonjudicial foreclosure sale it had conducted. A third party purchased the property at the foreclosure sale, and after payment of the first deed of trust holder, the Bank of America, remaining sale proceeds of $384,472.72 were left. The complaint named as defendants all those who claimed an interest in the proceeds. Generally, those with an interest in the proceeds included judicial lienholders whose liens were junior to that of the foreclosing trust deed holder, state tax liens, the bankruptcy estate, and the Debtors, who had owned the property.

    In an interim order filed February 2, 2006 (the "Interim Order"), the court granted the Debtors' motion to avoid liens (brought within this adversary proceeding) as to the judgment liens of Fresno Credit Bureau, Commercial Trade Bureau of California, Fresno Distributing Company, Assurance Company of America, Comerica Bank, Automated Building Components,

1

Thomas J. Driscoll, and Developers Insurance Company.

The Debtors have moved, within the adversary proceeding, to avoid all the remaining claimed judicial liens against the proceeds except for that of Creditors Bureau of California. They do not seek to avoid the tax liens of the California Franchise Tax Board (the "FTB") or the California Employment Development Department (the "EDD"). The FTB never responded to the complaint, and its default has been entered. All parties acknowledge that the judicial lien of Creditors Bureau of California has priority, does not impair the Debtors' homestead exemption, and should be paid. That part of the Debtors' motion to avoid the judgment lien created when Steven Scarpa recorded an abstract of judgment (later assigned to SIRE Enterprises, Inc.) was continued, so that the parties could file a Statement of Stipulated Facts. The final hearing was held May 31, 2006, on the issue of the extent of avoidability of the SIRE Enterprises, Ltd. ("SIRE") lien. Following the hearing, the court took the matter under submission. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(K).

The parties have agreed to the facts in a Statement of Stipulated Facts filed February 21, 2006. Thus, the court treats this motion to avoid lien as a motion for summary judgment under Federal Rule of Bankruptcy Procedure 7056.

The Facts.

The facts as agreed to by the Debtors and SIRE are:

1. The Debtors' underlying bankruptcy case was commenced by the filing of a voluntary petition for relief under Title 11 U.S.C. Chapter 7 on July 17, 2003.

2. The real property that is the subject of this stipulation ("The Subject Real Property") is that certain parcel of real property located at and commonly known as 9356 N. Purdue Ave., Clovis, California.

3. For the purposes of determining the Debtors' entitlement to claim a homestead exemption in their Chapter 7 case, the Subject Real Property was the Debtors' residence on July 17, 2003.

4. The Debtors' claimed a $75,000.00, homestead exemption in the Schedule C that they filed at the commencement of the case. Inasmuch as the Debtors' meeting of creditors had not been concluded as of the date of this stipulation, the deadline for objections to the Debtors' claim of exemptions in their Schedule C had not expired.

5. The Subject Real Property was sold at a nonjudicial foreclosure sale conducted pursuant to the power of sale provisions of Bank of America's Deed of Trust on March 1, 2005. The purchase price paid at the foreclosure sale was $752,100.00. The total unpaid debt owed to Bank of America at the time of the foreclosure sale, including foreclosure fees and costs, was $366,830.96. The surplus proceeds, which have since been turned over to the Chapter 7 Trustee pending further order of the Court, are $384,472.72.

6. The Subject Real Property had a fair market value of $656,000.00 on July 17, 2003, the date the bankruptcy petition was filed.

7. On the date the bankruptcy petition was filed, July 17, 2003, the Subject Real Property was encumbered by the following liens of record which are listed in order by date of recording (the list does not include any liens that have been avoided pursuant to the Court's Interim Order entered February 2, 2006).

    a. A deed of trust in favor of Bank of America, recorded on May 16, 1995. According to the Notice of Trustee Sale Recorded by Bank of America on June 6, 2003, the amount owed to Bank of America as of May 17, 2003, secured by its deed of trust, was $326,819.98. For the purposes of this stipulation, it is agreed that as of July 17, 2003, the Bank of America debt encumbering the Subject Real Property totaled approximately $330,000.00.

    b. A judgment lien in favor of Creditors Bureau of California recorded April 11, 2001, in the original amount of $6,511.49. For the purposes of this stipulation, it is agreed that, as of July 17, 2003, the amount owed to Creditors Bureau of California on said judgment was $7,976.58. This lien does not impair the Debtors' homestead exemption.

    c. A judgment lien in favor of Steven Scarpa (predecessor by assignment to SIRE) recorded May 14, 2001, in the original amount of $311,211,26. For the

purposes of this stipulation, it is agreed that as of July 17, 2003, the amount owed to SIRE on said judgment was $315,324.17. As of March 1, 2006, the amount owed to SIRE on said judgment exceeded $380,000.00.

        d.     A state tax lien recorded by the EDD on August 28, 2002, in the original amount of $13,218.31. The obligation secured by this lien is for unemployment contributions owed by the Debtors and assessed by the EDD pursuant to California Unemployment Insurance Code Sections 1701 et seq.

        e.     Two state tax liens recorded on June 3, 2003, securing obligations owed to the FTB, in the total amount of $195,442.46. The obligation secured by these liens is for income taxes, penalties and interest owed by the Debtors to the Franchise Tax Board, and assessed pursuant to California Revenue and Taxation Code Section 17000 et seq.

        8.     After the commencement of the above captioned Chapter 7 case, the Debtors commenced two Chapter 13 cases. The first case was commenced on November 17, 2003, and was numbered for referenced as case number 03-60433-A-13F. No plan was confirmed in this case.[1] The case was dismissed on the motion of the Chapter 13 Trustee by an order entered on May 27, 2004. The second case was commenced on June 1, 2005, and was numbered for referenced as case number 04-14723-A-13F. The case was dismissed on the motion of the Chapter 13 Trustee by an order entered on January 13, 2005.

        9.     With the exception of a payment in the amount of $3,499.29, from the Chapter 13 Trustee in second of the two cases described in the preceding paragraph, neither SIRE nor Steven Scarpa have received any payments toward the judgment since the commencement of the above captioned Chapter 7 case.

<u>Legal Issues.</u>

The question is the priority of SIRE's judgment lien and the extent to which it is avoidable as impairing the Debtors' exemption. The Debtors argue that the value the court

---

[1] The parties' stipulation includes copies of the chapter 13 plans, omitted here.

4

1  should utilize is the fair market value of the Subject Real Property on the date the petition was
2  filed. SIRE argues that the court should utilize as a value the purchase price paid at the
3  foreclosure sale. SIRE further argues that because of their behavior in this chapter 7 case and in
4  two now dismissed chapter 13 cases, the Debtors should not be entitled to any exemption or that
5  at least the Debtors' exemption should be surcharged for the extent to which their delay caused
6  damage to SIRE. SIRE further argues that in calculating any impairment to the exemption, the
7  FTB and EDD liens cannot be considered. The Debtors, on the other hand, argue that in
8  calculating the amount available for SIRE's judgment lien, the EDD and FTB liens need to be
9  considered first.

The starting place is Bankruptcy Code § 522(f). That section, as applicable to the Debtors' case,[2] provides:

> "(1) . . . [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is -
>
> (A) a judicial lien [with exceptions not applicable here] . . .
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of -
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
> (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens."

The Debtors are correct that exemption rights and lien avoidance rights are determined as of the date the bankruptcy petition was filed. In re Alexander, 236 F.3d 431 (8th Cir. 2001). See

---

[2] The Debtors filed their chapter 7 case in 2003. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 altered § 522(f). However, those changes are not applicable to this case.

5

also In re Goswami, 304 B.R. 386, 391-392 (9th Cir. BAP 2003); In re Chiu, 266 B.R. 743, 752-753 (9th Cir. BAP 2001), aff'd 304 F.3d 905.

The Ninth Circuit has explained the workings of a § 522(f) motion to avoid a lien.

> For purposes of 11 U.S.C. § 522(f), the debtor need not have an interest in the property at the time it moves to avoid. The operation of 11 U.S.C. § 522(f) is not to avoid a "lien," per se, although that is its practical effect in most cases. Rather, by its terms, 11 U.S.C. § 522(f) provides for the avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon". Thus, 11 U.S.C. § 522(f) operates retrospectively to annul the event of fastening the subject lien upon a property interest. Accordingly, the fundamental question of ownership is whether the property encumbered by the subject lien was "property of the debtor" at the time of the fixing of that lien upon such property. In re Chiu, 304 F.3d 905, 908 (9th Cir. 2002).

When the petition was filed, the Debtors owned the Subject Real Property, and their Schedule C shows a claim of exemption in the amount of $75,000. Subsequently, the Bank of America obtained relief from the automatic stay, and the Subject Real Property was sold.

The EDD filed a brief in connection with this hearing. In that brief, the EDD advised the court that in its view, its lien was junior to that of judicial liens recorded before it, which includes the SIRE lien. Its counsel also advised the court at the hearing that the FTB has decided not to appear in the action and believes its lien is also junior to that of SIRE.

SIRE asserts that the EDD and FTB no longer have liens against the Subject Real Property and/or the interpled funds. As to the FTB lien, SIRE argues that, when it failed to answer the interpleader complaint and the clerk entered its default, the FTB gave up its claim to the interpled funds. However, the docket reveals that the Plaintiff has not completed the default process. The clerk issued an order on March 20, 2006, that directed the Plaintiff to apply for a default judgment within 30 days of the date of this order. The cut-off was April 19, 2006. The Plaintiff failed to apply for the default judgment or set a "prove-up" hearing on calendar by the deadline. On April 18, 2006, the State of California filed a brief seeking essentially to not participate in the interpleader action, since it desired to conserve state resources in light of its estimation of a low chance of recovery. So no default judgment nor judgment on the pleadings has been entered against the State of California as to the FTB lien.

It is irrelevant that the State of California has declined to argue that it has a claim as to proceeds in the interpleader. The point of a § 522(f) motion is to determine which judicial liens

can be retrospectively unfastened. "Under § 522(f)(1), a debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." In re Chiu, 304 F.3d at 908. The fact that the FTB has defaulted is not relevant to the § 522(f) inquiry about the fixing of SIRE's judicial lien.

As to the EDD lien, SIRE cites Cal. Gov. Code § 7170 to assert that the entire EDD lien is not valid because it attached later in time than SIRE's judicial lien. Section 7170 states:

> § 7170. Attachment; Validity
> (b) A state tax lien is not valid as to real property against the right, title, or interest of any of the following persons where the person's right, title, or interest was acquired or perfected prior to recording of the notice of state tax lien in the office of the county recorder of the county in which the real property is located pursuant to Section 7171:
> ...
> (4) A judgment lien creditor.

However, § 7170 does not state that such state tax lien is invalid as to everyone. Rather, the plain language of § 7170 states that it is not valid only against a judgment lien creditor whose interest was "acquired or perfected prior to recording of the notice of state tax lien."

The United States Supreme Court has held that a state law cannot circumvent lien avoidance. Owen v. Owen, 500 US 305 (1991). In Owen, the Court considered the Florida homestead exemption, which excluded from property on which a homestead exemption could be claimed property encumbered by pre-existing liens. In that case, the debtor's former wife had obtained a judgment against the debtor for $ 160,000. The debtor subsequently acquired a condominium, which then became subject to his ex-wife's pre-existing judgment lien. The debtor filed a chapter 7 bankruptcy case and claimed the condominium as exempt. The debtor sought to avoid his ex-wife's pre-existing judicial lien pursuant to § 522(f). The lower courts permitted the exemption but refused to avoid the lien on the basis of the state definition of an exemption.

The Supreme Court reversed the lower courts and held that proper application of § 522(f) required that any judicial lien be avoided if it impairs an exemption that the debtor would have had but for the judicial lien. The fact that Florida law removes property subject to a lien that existed before the homestead exemptions was claimed from the scope of its homestead exemption does not preclude avoidance of the lien. The Supreme Court ruled that the critical

7

inquiry is whether the debtor's property would have been exempt but for the lien.

> ". . . this reading is more consonant with the text of § 522(f) - establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "is entitled," but one to which he "would have been entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" but for what? The answer given, with respect to the federal exemptions, has been but for the lien at issue, and that seems to us correct."

Owen v. Owen, 500 U.S. 305, 311 (U.S. 1991)(emphasis in original).

Here, in performing a § 522(f) analysis we conceive a situation where SIRE's judicial lien did not exist. In that case, Cal. Gov. Code § 7170 would not in any way affect the EDD lien. The EDD would retain the full tax lien and the Debtors could still enjoy a full $75,000 exemption. Compare that to a situation in which SIRE's judicial lien does exist (and so does the EDD lien) and one finds that SIRE's judicial lien would eat into the Debtors' $75,000 exemption.

If SIRE's lien did not exist, the Debtors could claim the full $75,000 homestead exemption:

| | | |
|---|---|---|
| Fair Market Value | $ | 656,000.00 |
| 1st Deed of Trust | $ | (330,000.00) |
| Creditors' Bureau | $ | (7,976.58) |
| EDD tax lien | $ | (13,218.31) |
| FTB tax lien | $ | (61,837.33) |
| SIRE's lien | | |
| amount remaining for homestead | $ | 242,967.78 |

But if SIRE's lien does exist, the value of the liens exceed the value of the Subject Real Property and impair the homestead exemption.

| | | |
|---|---|---|
| Fair Market Value | $ | 656,000.00 |
| 1st Deed of Trust | $ | (330,000.00) |
| Creditors' Bureau | $ | (7,976.58) |
| EDD tax lien | $ | (13,218.31) |
| FTB tax lien | $ | (61,837.33) |
| SIRE's lien | $ | (315,324.17) |
| amount remaining for homestead | $ | (72,356.39) |

Accordingly, SIRE's judicial lien impairs an exemption that the Debtors "could claim if there were no liens on the property." § 522(f)(2)(A)(iii). Cal. Gov't. Code 7170 does nothing to alter the analysis.

SIRE also asserts that the FTB and EDD liens are judicial liens that were perfected after SIRE's lien and should thus be avoided. SIRE cites In re Markair in support of the view that a taxing authority may hold a judicial lien for the payment of taxes, rather than the more typical statutory tax lien. 308 F.3d 1038 (9th Cir. 2002). In Markair, the debtor had overpaid certain taxes and requested a refund. The IRS asserted a right to setoff the amount of the overpayment against outstanding tax liabilities. However, such an offset would essentially shutdown the business. So the IRS agreed by stipulation to accept a second place judicial lien position as to the collateral (the tax overpayment) and forego its right to setoff. Eventually, the debtor failed to meet its obligations and the case was converted to Chapter 7. The Chapter 7 trustee sought to subordinate the IRS "judicial lien" on the theory that it was a tax lien, subject to subordination under § 724(b). The Ninth Circuit held that § 724(b) did not apply to a judicial lien held by the IRS, even though the obligation secured by the lien was a tax obligation. So SIRE is correct that some liens for the payment of taxes are judicial liens, and § 522(f) does allow lien avoidance for judicial liens. However, the Markair court emphasized that the typical tax lien is a statutory lien and not a judicial lien. Id., at 1041-1042.

In the present case, the FTB lien resulted from the filing of a certificate specifying the amount due with the Office of the County Clerk of Sacramento County. Cal. Rev. & T. Code § 19201. Such lien conforms to the definition of a statutory lien: "[t]he term 'statutory lien' means lien arising solely by force of a statute on specified circumstances or conditions." Bankruptcy Code § 101(53). In contrast, a judicial lien exists where the "lien [is] obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Bankruptcy Code § 101(36).

SIRE argues that "the filing of the certificate with the county clerk serves as the legal or equitable process or proceeding required by 11 U.S.C § 101(36)." SIRE does not cite any cases adopting such a view. While the recording of the lien may determine whether it is perfected to the extent that it may not be avoided by the trustee under section 545, it does not transmute a

9

statutory lien into a different kind of lien. 2-101 Collier on Bankruptcy-15th Edition Rev. P 101.53.

> Good examples of statutory liens are tax liens of the United States and local governments, mechanics' or contractors' liens, landlords' liens, possessory liens of repairmen and garagemen and liens for wages where granted by statute. A maritime lien is a statutory lien. Sewer authority's liens, mechanic's liens and material-men's liens are typically statutory liens arising through force of statute, and merely because they require some form of judicial filing for their perfection against other creditors or continued effectiveness, they are not transformed into judicial liens. Id.

There are no unusual facts, such as in Markair, where the parties stipulated to characterizing the lien as a "judicial lien." The EDD and FTB tax liens are not judicial liens subject to avoidance under § 522(f). As such they are included in the calculation of § 522(f). Section 522(f)(2)(i) and (ii) require a nonavoidable lien to be included in the calculation even if it is junior to the lien in question.

SIRE also argues that the Debtors should be judicially estopped from seeking avoidance of SIRE's judgment lien; that the motion is barred by laches; and that SIRE has been prejudiced. As SIRE observes, the chapter 7 case and the two now dismissed chapter 13 cases have been pending for almost three years. In the second chapter 13 case, a chapter 13 plan was confirmed that allowed SIRE's lien to remain on the Subject Real Property and provided that SIRE's claim would be paid in full. SIRE argues that it did not seek relief from stay in that chapter 13 case because it relied on its treatment in the confirmed plan that it would be paid in full. Therefore, according to SIRE, its position was eroded because the debt to Bank of America increased until the foreclosure sale. At the time this chapter 7 case was filed, July 17, 2003, the Bank of America was owed approximately $330,000. By the time the foreclosure sale occurred, the Bank of America was owed $366,830.96, an increase of $36,830.96. Interest also accrued on the senior Creditors' Bureau obligation.

The Debtors are not judicially estopped from avoiding SIRE's lien. The case in which there was a confirmed chapter 13 plan has been dismissed. Bankruptcy Code § 349 deals with the effect of dismissal. Section 349(a) states that unless the court orders otherwise, dismissal of a case does not "prejudice the debtor with regard to the filing of a subsequent petition under [the Bankruptcy Code] except as provided in § 109(g)."

Under § 349(b) dismissal reinstates transfers avoided or preserved under the Bankruptcy Code and vacates orders, judgments or transfers ordered under § § 522(i)(1), 542, 550, or 553. Dismissal revests the property of the estate in the entity in which the property was vested immediately before the commencement of the case. The purpose of § 349(b) "is to undo the bankruptcy case, as far as is practicable and to restore all property rights to the position in which they were found at the commencement of the case." House Report No. 95-595, 95th Cong., 1st Sess. 337-38 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 48-9 (1978).

The Coxes are not judicially estopped from now avoiding the lien. If the Debtors had filed a chapter 13 case, proposed a plan to pay all creditors, and then, being unable to make the payments, had converted to chapter 7, there would be no impediment to their then moving to avoid liens that impaired their homestead exemption. The result should be the same here, particularly where SIRE has not, in fact, been prejudiced. SIRE's lien was fully avoidable when this chapter 7 case was filed, and it remains fully avoidable now. The intervening chapter 13 cases did not affect this result.

In In re Arnold, the Ninth Circuit Bankruptcy Appellate Panel considered the effect of bad faith, prejudice, and delay on exemption rights. 252 B.R. 778 (9th Cir. BAP 2000). The Arnolds filed their chapter 7 case after Mr. Arnold had been injured and had filed a personal injury action in state court. The Arnolds did not list the state court action on their bankruptcy schedules but did list it on the statement of financial affairs. The trustee questioned them about the state court action at their § 341 meeting of creditors. The trustee negotiated the settlement of the state court action. After that, the Arnolds amended their bankruptcy schedules to claim the proceeds of the state court personal injury action exempt. The trustee objected to the amended claim of exemption arguing that it should be disallowed on the grounds of bad faith and prejudice. According to the trustee, bad faith was established because the amendment was not filed until more than three years after the petition was filed and five months after the trustee reached his settlement in the state court action. The bankruptcy court approved the settlement but disallowed the amended exemption. The Bankruptcy Appellate Panel reversed, nothing that

11

amendments to exemptions were to be liberally allowed absent bad faith or prejudice to third parties. The court observed that:

> "Merely showing prejudice does not automatically trigger disallowance of an amendment [to an exemption]: the court must balance the prejudice to the debtor or disallowing the exemption against the prejudice to third parties in allowing the exemption."

Id. at 785 (interior quotations and citations omitted).

This reasoning is applicable to the facts here. SIRE asserts that it has been prejudiced by delay, in avoiding the lien. In Arnold, the trustee asserted that creditors had been damaged by the delay in amending the exemption.

The Bankruptcy Appellate Panel in Arnold stated that prejudice to creditors "is clearly present where they suffer an actual economic loss due to a debtor's delay in claiming his exemption." Id. at 787. In other words, delay itself does not prejudice the creditor. The creditor must suffer an actual loss that is attributable to the delay.

In this instance, the court is unable to find that SIRE has been prejudiced by the delay. If the Debtors had moved to avoid the liens at the time the bankruptcy case had been filed, the result to SIRE would have been the same.

Laches is an equitable doctrine that may apply when there is an unreasonable or unexcused delay by the party asserting the claim and the defending party is prejudiced by the lack of diligence. Greenwell v. Carty (In re Carty), 149 B.R. 601, 603 (9th Cir. BAP 1993). Based on the analysis in Arnold, the doctrine of laches does not assist SIRE.

In their chapter 13 case, the Debtors proposed a plan that did not avoid SIRE's lien and contemplated payment of SIRE's debt in full. The plan was confirmed. Subsequently, the case was dismissed. Under these circumstances, may the Debtors now avoid SIRE's lien or are they judicially estopped?

For the above reasons, the Debtors' motion to avoid lien of SIRE Enterprises, Ltd. will be granted. The Debtors may submit a proposed form of order.

DATED: August 17, 2006.

WHITNEY RIMEL, Judge
United States Bankruptcy Court

12

| | |
|---|---|
| 1 | PROOF OF SERVICE BY MAIL |
| 2 | STATE OF CALIFORNIA ) |
| | ) ss. |
| 3 | COUNTY OF FRESNO ) |

    I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On August 17, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

David R. Jenkins, Esq.
P. O. Box 1406
Fresno, CA 93716

Edward A. Treder, Esq.
P. O. Box 3269
Covina, CA 91722

Gerald Vinnard, Esq.
7108 N. Fresno St., #410
Fresno, CA 93720

Steven Green
1300 I Street, Suite 125
P. O. Box 944255
Sacramento, CA 94244

Michael Fletcher
5400 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048

Office of the United States Trustee
2500 Tulare Street
Suite 1401
Fresno, California 93721

    I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on August 17, 2006, at Fresno, California.

                                                               *Kathy Torres*
                                                                Kathy Torres, PLS